# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** )<br>Plaintiff, )<br> )<br>v. )<br> )<br> )<br> )<br> )<br>Adrian Lorenzo AISPURO-Medina, )<br>Mauro Leonel GONZALEZ-Lopez, )<br> )<br> )<br> )<br>Defendants. ) | Magistrate Docket No.  **23mj4229-KSC**<br><br>COMPLAINT FOR VIOLATION OF:<br>Title 8, U.S.C. § 1324(a)(1)(A)(i)<br>Attempted Bringing In Illegal Aliens At<br>Other Than Port Of Entry<br><br>Title 8, USC § 1326 Attempted Entry<br>After Deportation |

The undersigned complainant, being duly sworn, states:

### Count One

On or about November 27, 2023, within the Southern District of California, defendant Adrian Lorenzo AISPURO-Medina, knowing or in reckless disregard of the fact that certain aliens, namely, Mauro Leonel GONZALEZ-Lopez and Juan Carlos RAMIREZ Gutierrez, had not received prior official authorization to come to, enter and reside in the United States, did attempt to bring to the United States said aliens at a place other than a designated Port Of Entry or place other than as designated by the commissioner; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(i).

Count Two

On or about November 27, 2023, within the Southern District of California, defendant, Mauro Leonel GONZALEZ-Lopez, an alien, who previously had been excluded, deported and removed from the United States, attempted to enter the United States with the purpose, i.e. conscious desire, to enter the United States at or near San Ysidro, California, without the Attorney General or his designated successor, the Secretary of the Department of Homeland Security (Title 6, United States Code, Sections 202(3) and (4), and 557), having expressly consented to the defendant's reapplication for admission into the United States; in violation of Title 8 United States Code, Section 1326.

And the complainant further states that this complaint is based on the attached probable cause statement, which is incorporated herein by reference.

_____
SIGNATURE OF COMPLAINANT
Jesse Bojorquez
Border Patrol Agent

SWORN AND ATTESTED TO UNDER OATH BY TELEPHONE, IN ACCORDANCE WITH FEDERAL RULE OF CRIMINAL PROCEDURE 4.1, ON NOVEMBER 28, 2023.

_____
HON. KAREN S. CRAWFORD
United States Magistrate Judge

**CONTINUATION OF COMPLAINT:**
Adrian Lorenzo AISPURO-Medina,
Mauro Leonel GONZALEZ-Lopez

## PROBABLE CAUSE STATEMENT

The complainant states that Juan Carlos RAMIREZ Gutierrez and Mauro Leonel GONZALEZ-Lopez, are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On November 27, 2023, at approximately 3:50 AM, Supervisory Border Patrol Agent C. Mansfield was conducting his assigned duties in the Imperial Beach Border Patrol Station area of responsibility. A camera operator at the Joint Harbor Operations Center (JHOC) advised, via service radio, of two northbound jet skis five and a half miles south of Point Loma, California. The JHOC camera operator believed the jet skis were headed to an area known to Border Patrol Agents as "Smuggler's Cove". Agent Mansfield responded to the "Smuggler's Cove" area to interdict any person that may disembark from the jet skis. Upon positioning his unmarked vehicle at the cliff side parking lot, Agent Mansfield utilized his agency issued hand-held forward looking infra-red (FLIR) to scan the ocean. Agent Mansfield then observed two individuals coming out of the ocean surf from at least waist to chest deep water and walk east on the beach at the south end of "Smuggler's Cove". When the two individuals reached the cliffs, a third individual was observed. The three individuals then began to climb the cliffs up a makeshift trail near the intersection of Sunset Cliffs Blvd and Cordova Street. Agent Mansfield relocated toward the cliffs edge to further observe the individuals climbing the cliffs.

Upon arriving at the cliff side, Agent Mansfield met with Border Patrol Agent A. Field and together proceeded to the location of the trail where the individuals were trying to climb. Upon reaching the trail area, Agent Mansfield observed three males dressed in all black in a 10-foot-deep crevasse about 40 feet west of Sunset Cliffs Blvd huddled together, crouching on the ground.  It appeared they were hiding.

Agent Mansfield identified himself as a United States Border Patrol Agent and instructed the individuals to come towards him. Two of the individuals later identified as, defendant, Mauro GONZALEZ-Lopez and material witness, Juan RAMIREZ Gutierrez, complied. GONZALEZ and RAMIREZ climbed up the trail to Agent Mansfield where they were detained. The third individual later identified as, defendant, Adrian Lorenzo AISPURO-Medina turned west and climbed back down the cliffs to the beach.

**CONTINUATION OF COMPLAINT:**
**Adrian Lorenzo AISPURO-Medina,**
**Mauro Leonel GONZALEZ-Lopez**

Agent Mansfield conducted an immigration inspection of GONZALEZ and RAMIREZ to which both stated they were citizens of Mexico without proper documentation to enter or remain in the United States legally. Agent Mansfield asked GONZALEZ and RAMIREZ if they had just crossed illegally into the United States on a jet ski via the Pacific Ocean, they both said "Yes". At approximately 4:20 AM, Agent Mansfield placed GONZALEZ and RAMIREZ under arrest.

After a brief pursuit, Agent Field apprehended AISPURO. Agent Field identified himself as a United States Border Patrol Agent and conducted an immigration inspection of AISPURO. AISPURO claimed to be a citizen and national of Mexico and did not possess any immigration documents that would allow him to enter or remain in the United States legally. At approximately 4:26 AM, Agent Field placed AISPURO under arrest.

The defendant, AISPURO was advised of his Miranda rights. AISPURO stated that he understood his rights and was willing to speak to agents without an attorney present. AISPURO denied being a foot guide, adding that he was one of the two people dropped off by the jet skis. When asked why his clothes were only wet from the knee area of his pants and not the rest, AISPURO claimed that the jet ski pilot was blocking the splash. AISPURO denied knowing how the other two subjects he was apprehended with arrived, insisting he was one of the people dropped off.

AISPURO continued to be vague in his answers or did not answer the questions presented to him. AISPURO was asked if he did not want to answer any more questions, but he claimed he was fine answering any questions. However, several times he questioned the agents on why it was important to know his route from Mexico to the United States, and why a criminal record in Mexico would be relevant to the case. When asked if he was apart of a smuggling group, AISPURO took his time providing an answer and then denied being part of the smuggling group. AISPURO claimed he was just trying to come to the United States to find work. AISPURO claimed to have paid $5,000 MXN to cross into the United States and had agreed to pay an additional $15,000 USD once he arrived at his destination in Modesto, California. When asked if he would give consent for his phone to be screened by Border Patrol Agents, AISPURO claimed his phone was lost somewhere in the water.

The defendant GONZALEZ was read his Miranda Rights. GONZALEZ stated that he understood his rights and agreed to speak to agents without an attorney present. GONZALEZ stated that he was provided his smuggling contacts from an acquaintance in Rosarito and would

**CONTINUATION OF COMPLAINT:**
**Adrian Lorenzo AISPURO-Medina,**
**Mauro Leonel GONZALEZ-Lopez**

be charged $12,000 USD, if he made it to his location in San Diego, CA. GONZALEZ continued to state that there were only two jet-skis with two people on each, and that only two people were dropped off on the beach. When asked where the third subject originated from, GONZALEZ stated that he didn't know but that only he and the other passenger he identified as "Juan" came from jet-skis.

Material Witness, RAMIREZ admitted to being a citizen and national of Mexico. RAMIREZ stated that he was going to pay $18,500 USD if he was successfully smuggled into the United States. RAMIREZ' final destination was Sacramento, California. RAMIREZ stated his brother, who resides in the United States, made his smuggling arrangements. RAMIREZ stated he was taken from Rosarito, Mexico to some islands, from there, he was placed on a jet ski to be smuggled into the U.S. RAMIREZ stated he was given instructions to follow a person who would be waiting for them on the beach up to the street. RAMIREZ stated, once he got close to the beach, the jet ski operator threw him into the ocean. RAMIREZ stated that he disembarked in deep water; it covered his body entirely. RAMIREZ stated he could not swim to shore, and only made it to shore because the waves pushed him towards the beach. RAMIREZ stated he ingested a lot of ocean water, and he feared he was going to drown. RAMIREZ was told the guide on the beach would lead them up a cliff trail to the street where there was a "Y" intersection, and at that location, a vehicle would be waiting to pick them up. RAMIREZ positively identified photo #5, Adrian Lorenzo AISPURO-Medina, as being the guide waiting for them on the beach.

Routine record checks of the defendant revealed a criminal and immigration history. The defendant's record was determined by a comparison of his criminal record and the defendant's current fingerprints. Official immigration records of the Department of Homeland Security revealed the defendant was previously deported to Mexico on January 10, 2015 through Eagle Pass, Texas. These same records show that the defendant has not applied for permission from the Attorney General of the United States or his designated successor, the Secretary of the Department of Homeland Security, to return to the United States after being removed.